**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARK DIBUO, a minor, by his
parents and next friends, James and
Wendy DiBuo; JAMES DIBUO;
WENDY DIBUO,

> *Plaintiffs-Appellees,*

v.

BOARD OF EDUCATION OF WORCESTER
COUNTY; JON ANDES, Officially,
> *Defendants-Appellants.*

No. 01-2473

MARK DIBUO, a minor, by his
parents and next friends, James and
Wendy DiBuo; JAMES DIBUO;
WENDY DIBUO,

> *Plaintiffs-Appellees,*

v.

BOARD OF EDUCATION OF WORCESTER
COUNTY; JON ANDES, Officially,
> *Defendants-Appellants.*

No. 02-1124

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-01-1311-S)

Argued: September 24, 2002

Decided: October 28, 2002

Before MICHAEL, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Claude M. HILTON, Chief United States District Judge
for the Eastern District of Virginia, sitting by designation.

---

Vacated and remanded with instructions by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge Michael and Chief Judge Hilton joined.

---

## COUNSEL

**ARGUED:** Phillip Tyson Bennett, REESE & CARNEY, L.L.P., Annapolis, Maryland, for Appellants. Wayne Darryl Steedman, CAL-LEGARY & STEEDMAN, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Eric C. Brousaides, REESE & CARNEY, L.L.P., Columbia, Maryland, for Appellants.

---

## OPINION

HAMILTON, Senior Circuit Judge:

In this action arising under the Individuals with Disabilities Education Act (the IDEA), 20 U.S.C. §§ 1400 *et seq.*, Mark DiBuo (Mark), a minor child, and his parents, James and Wendy DiBuo, (collectively the DiBuos) sought $2,707.00 in reimbursement from the Board of Education of Worcester County, Maryland and its superintendent in his official capacity, Jon Andes, (collectively the School District) for the costs associated with the private placement of Mark in speech/language therapy and occupational therapy through Easter Seals during the summer of 2000.[1] The district court granted summary

---

[1]In IDEA parlance, educational services provided to a disabled child during the summer in a school system where children do not normally attend school during the summer are called extended school year services (ESY Services). 34 C.F.R. § 300.309.

judgment in favor of the DiBuos and awarded them $58,567.48 in attorneys' fees and other costs, pursuant to the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B). For reasons that follow, we vacate the district court's judgment, vacate the award of attorneys' fees and other costs, and remand the case for further proceedings in accordance with this opinion.

## I.

The following facts are not in dispute. Mark was born on December 19, 1996. By age three, Mark exhibited interfering behaviors that impacted his ability to benefit from a normal educational program. The interfering behaviors included "great difficulty 'attending' to a task, the inability to focus, squirming, kicking, hitting, moving away and otherwise not cooperating with learning strategies." (J.A. 392). Mark's problems led his parents to seek IDEA services for him from the School District. As a result, on February 8, 2000, an Individualized Education Program (IEP) team met regarding Mark.[2] At this meeting, all agreed that Mark should be considered a student with a speech/language disability who requires special education services in order to receive a FAPE. Thus, on February 17, 2000, Mark began an interim placement at Buckingham Elementary School in the Language Stimulation Program for three year olds, pending another meeting of Mark's IEP team (Mark's IEP Team).

Mark's disability is classified as "Pervasive Developmental Disorder" (PDD), and it is suspected that he may also have neurofibromatosis. His PDD was diagnosed by expert physicians at the A.I. DuPont Hospital for children in March 2000. The A.I. DuPont physicians determined that Mark has a rather significant disability with language and also problems with auditory processing that were causing some behavioral problems. The A.I. DuPont physicians also determined

---

[2]The IDEA requires all states receiving federal funds for education to provide each child between the ages of three and twenty-one, who has a disability, with a free appropriate public education (FAPE) that is designed specifically to meet that child's needs. 20 U.S.C. § 1412(a)(1)(A). An IEP team generally consists of a representative of the school district, the child's teacher, the parents or guardian and, when appropriate, the child himself. 20 U.S.C. § 1414(d)(1)(B).

that Mark's disability required that he receive speech/language therapy and occupational therapy.

From February 17, 2000 until March 29, 2000, Mark made remarkable progress in his Speech/Language Stimulation Program at Buckingham Elementary School, such that he became able to accompany his family to restaurants. After completion of an educational assessment by Holly Hermstedt, Mark's classroom teacher at Buckingham Elementary School, Mark's IEP Team met again on March 29, 2000 (the March 29, 2000 IEP Meeting) in order to prepare a formal IEP. At this meeting, Mark's IEP Team considered a speech/language and occupational therapy assessment conducted by Easter Seals in November 1999, as well as the educational assessment conducted by Holly Hermstedt. Based upon this information, Mark's IEP Team concluded that Mark's interfering behaviors and educational needs required speech/language therapy and occupational therapy. Thus, at the March 29, 2000 IEP Meeting, the School District members of Mark's IEP Team proposed an IEP for him (the Proposed IEP), which contained specific objectives to address Mark's weaknesses.[3] In order to meet these specific objectives, the Proposed IEP provided that Mark should participate twelve hours per week in the Buckingham Language Stimulation Program[4]; receive one hour per week of speech/language therapy; and receive one hour per week of occupational therapy.

Mark's parents, for their part, agreed with the Proposed IEP as far as it went, but expressed their strong feelings that Mark should receive ESY Services during the summer of 2000. In support of their position, Mark's parents produced written evaluations from the following professionals: (1) Stephen Falchek, M.D., (Dr. Falchek) dated

---

[3]Virtually every objective on the educational component of the Proposed IEP concerned emerging skills and breakthrough opportunities with regard to Mark's communication and language skills, his attending skills, his toileting skills, and his safety skills.

[4]Mark was developing numerous critical life skills in the Buckingham Language Stimulation Program, including attending skills, social skills, toileting skills, comprehending vocabulary, using language interactively, using sensory information more effectively, and improving fine motor skills and visual perception.

December 27, 1999, March 14, 2000, and March 23, 2000; (2) Susan Stine, M.D., (Dr. Stine) dated March 7, 2000; and (3) Jill Linden, Ph.D. in psychology, (Dr. Linden) undated.[5] In one of his evaluations, Dr. Falchek stated that he feared that Mark would "lose significant ground" if he did not receive ESY Services during the summer of 2000. (J.A. 44). In another of Dr. Falchek's evaluations, he opined that Mark should receive ESY Services for the summer of 2000 because Mark was "quite tenuous" in his development. (J.A. 43). Dr. Stine recommended that Mark be considered for ESY Services during the summer of 2000. Dr. Linden opined that "it is important that [Mark] continue in a school program that includes classroom time plus speech and occupational therapies all year round, with no summer break." (J.A. 33).

The School District members of Mark's IEP Team staunchly refused to read or review any of these professional evaluations submitted by Mark's parents. According to Kathy Simon, a representative of the Worcester County School System who was present at the March 29, 2000 IEP Meeting, the School District members of Mark's IEP Team refused to consider the evaluations because they believed that Mark was simply not eligible for ESY Services.

Mark's parents refused to sign the Proposed IEP because it did not include ESY Services for the summer of 2000. Nevertheless, with the consent of his parents, Mark continued to receive interim services for the remainder of the regular 1999-2000 school year that were basically consistent with those contained in the Proposed IEP. Then, at their own expense, Mark's parents obtained speech/language therapy and occupational therapy for Mark through Easter Seals during the summer of 2000.[6]

On October 19, 2000, the DiBuos requested a due process hearing before an administrative law judge (the ALJ) to consider their claim that the School District must reimburse them for the ESY Services

---

[5]From here forward, these private evaluations submitted by Mark's parents will be referred to as "the DiBuos' ESY Services Evaluations."

[6]Notably, Mark did not receive occupational therapy from August 3, 2000 to August 27, 2000, because his occupational therapist was unavailable.

(speech/language therapy and occupational therapy) that they privately obtained for Mark during the summer of 2000.[7] On November 9, 2000, the School District responded with a motion to dismiss and an alternative motion for a summary decision. The DiBuos opposed these motions and on November 16, 2000, filed their own motion for summary decision.

On December 1, 2000, the ALJ denied the parties' respective motions and set the case for a full hearing on the merits. At the hearing, which was conducted on December 7 and 8, 2000, the ALJ heard testimony and received exhibits on behalf of the respective parties.

On January 5, 2001, the ALJ issued a final decision. Of relevance in the present appeal, the ALJ found that the staunch refusal of the School District members of Mark's IEP Team to consider the DiBuos' ESY Services Evaluations at the March 29, 2000 IEP Meeting, violated the IDEA's related mandates that the parents of a child under review be afforded the opportunity to participate in all IEP team meetings and that the IEP team review all evaluations and information provided by parents of a child under review. 20 U.S.C. §§ 1414(c)(1)(A), 1415(b); *see also* 34 C.F.R. § 300.502(c). Then, citing our decision in *Gadsby v. Grasmick*, 109 F.3d 940 (4th Cir. 1997), for the proposition that not every procedural violation of the IDEA warrants granting the relief requested, the ALJ also found that Mark "was not denied [a] FAPE as a result, because the evidence [did] not establish that ESY [S]ervices were warranted under the legal standard."[8] (J.A. 399). The ALJ made this finding after considering

---

[7]Technically, the case before the ALJ was captioned "Mark DiBuo v. Worcester County Public Schools." For the sake of continuity and ease of reading, we will refer to the parties before the ALJ as we refer to them in the federal action before us on appeal.

[8]Similarly, the ALJ stated near the very end of her final decision that: "I agree with [the DiBuos] that the [School District] erred by not considering the expert medical reports and evaluations presented at the March 29, 2000 IEP [T]eam [M]eeting. Nevertheless, when that expert evidence is considered in light of all the evidence of record, it does not establish that [Mark] will have a regression/recoupment problem of sufficient severity to preclude him from receiving some educational benefit if he does not receive ESY [S]ervices. Accordingly, I cannot conclude that the

and analyzing the expert written opinions and testimony offered by the DiBuos during the hearing (which included the DiBuos' IEP Services Evaluations) and the expert testimony offered by the School District at the hearing. Near the end of the ALJ's final decision, she formally concludes that the Proposed IEP offered Mark a FAPE. Accordingly, the ALJ declined to grant the DiBuos the reimbursement they were seeking.

As parties aggrieved by the ALJ's final decision, the DiBuos filed the present civil action against the School District, pursuant to 20 U.S.C. § 1415(i)(2)(A), in the United States District Court for the District of Maryland. On cross motions for summary judgment, the district court granted the DiBuos' motion for summary judgment and denied the School District's motion for summary judgment. Thus, the district court ordered the School District to pay the DiBuos the reimbursement they were seeking, and also awarded the DiBuos $58,567.48 in attorneys' fees and other costs pursuant to the IDEA's fee-shifting provision.

In granting summary judgment for the DiBuos, the district court concluded that the refusal of the School District members of Mark's IEP Team to consider the DiBuos' ESY Services Evaluations "seriously infringed the parents' opportunity to participate in the IEP formulation process," and *ipso facto*, "Mark and his parents suffered substantive harm." (J.A. 423). Based upon this conclusion and notably without addressing whether the ALJ erred in finding that the Proposed IEP would have provided Mark with a FAPE, despite its lack of any provision for ESY Services for the summer of 2000, the district court ordered the School District to reimburse the DiBuos for the ESY Ser-

---

March 29, 2000 IEP proposed by the [School District] failed to offer [a] FAPE by its exclusion of ESY [S]ervices." (J.A. 403-04).

In our circuit, whether an IEP is "appropriate" for purposes of the IDEA is a question of fact. *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991) (observing that whether an IEP is appropriate under the IDEA is a question of fact).

vices (speech/language therapy and occupational therapy) that Mark received during the summer of 2000.[9]

On appeal, the School District does not challenge the district court's determination that it violated certain procedural requirements of the IDEA by failing to consider the DiBuos' ESY Services Evaluations at the March 29, 2000 IEP Meeting in determining whether Mark should receive ESY Services for the summer of 2000. Rather, the School District vigorously challenges the district court's entry of judgment in favor of the DiBuos without determining whether the ALJ erred in finding that such procedural violations did not actually interfere with the provision of a FAPE to Mark. According to the School District, a procedural violation of the IDEA cannot support a finding that a school district failed to provide a disabled child a FAPE *unless* the procedural violation actually interfered with the provision of a FAPE to that child. The School District then goes on to contend that we should review the ALJ's finding on this point in the first instance and uphold it. On this basis, the School District seeks reversal of the judgment entered by the district court and vacature of its award of attorneys' fees and other costs. Alternatively, the School District seeks the same ultimate outcome on the basis that because Mark did not already have an approved IEP in place when his IEP Team considered whether he should also be provided ESY Services for the summer of 2000, he was ineligible for such services. In the event we affirm the judgment of the district court, the School District also makes numerous challenges to the award of attorneys' fees and other costs, including a challenge to the district court's award of expert witness fees as part of costs.

On appeal, the DiBuos seek affirmance of the judgment entered by the district court and its award of attorneys' fees and other costs in their favor. However, if we address the issue of whether the ALJ erred in finding that the Proposed IEP provided Mark a FAPE, despite its lack of any provision for ESY Services for the summer of 2000, the DiBuos contend that the ALJ did so err.

---

[9]The district court also rejected the School District's argument that the lack of an *already approved* IEP for Mark at the time ESY Services were being considered barred him from being eligible for ESY Services for the summer of 2000.

## II.

Before delving into the legal issues presented in this appeal, we believe it helpful to further elucidate the statutory backdrop that we encounter in this case. Congress enacted the IDEA, in part, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); *see also Gadsby*, 109 F.3d at 942. Another purpose of the IDEA is "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(B). In order to achieve these and other stated purposes, the IDEA requires all states receiving federal funds for education to provide each child, between the ages of three and twenty-one, who has a disability, a FAPE that is designed specifically to meet that child's needs. 20 U.S.C. § 1412(a)(1)(A).

Congress saw parental participation in the process of developing an IEP as integral to achieving the noble purposes of the IDEA. As the Supreme Court stated in *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176 (1982):

> It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process . . . as it did upon the measurement of the resulting IEP against a substantive standard.

*Id.* at 205-06. Notably, although the IDEA requires that "[s]tates must provide specialized instruction and related services sufficient to confer some educational benefit upon the handicapped child," it "does not require the furnishing of every special service necessary to maximize each handicapped child's potential." *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1998) (internal quotation marks and citations omitted).

Of particular relevance in the present appeal, in *MM v. School District of Greenville County*, No. 01-1364, 2002 WL 31001195 (4th Cir.

Sept. 6, 2002), we recently articulated, for the first time, a formal standard for determining when ESY Services are appropriate under the IDEA: "ESY Services are only necessary to a FAPE when the benefits a disabled child gains during a regular school year will be significantly jeopardized if he is not provided with an educational program during the summer months." *Id.* at *11. In *MM*, we carefully emphasized that, under this standard, "the mere fact of likely regression is not a sufficient basis, because all students, disabled or not, may regress to some extent during lengthy breaks from school." *Id.*

## III.

We now turn to the threshold question presented in this appeal: Whether a procedural violation of the IDEA can support a finding that a school district failed to provide a disabled child with a FAPE when the procedural violation *did not actually interfere* with the provision of a FAPE to that child. The answer to this question, under well-established circuit precedent, is no.

Most recently, in *MM*, we relied upon our decision in *Gadsby v. Grasmick*, 109 F.3d 940 (4th Cir. 1997) to reiterate that "[w]hen . . . a procedural [violation of the IDEA] exists, we are obliged to assess whether it resulted in the loss of an educational opportunity for the disabled child, or whether, on the other hand, it was a mere technical contravention of the IDEA." *MM*, 2002 WL 31001195 at *7. In *Gadsby*, the parents of a disabled child contended that Maryland's State Board of Education violated a particular notice provision of the IDEA when it failed to notify them before effectively denying the application for reimbursement for private school tuition that had been submitted to the Board by their local education agency on behalf of their son. *Gadsby*, 109 F.3d at 956. According to the parents, this violation constituted an independent denial of a FAPE to their son, giving rise to an obligation to reimburse them for the remaining portion of their son's private school tuition for the 1993-94 school year. *Id.*

In addressing this latter contention, we acknowledged in *Gadsby* that, in *Hall v. Vance County Board of Education*, 774 F.2d 629 (4th Cir. 1985), we "held that the failure to comply with [the] IDEA's procedural requirements, such as the [parental] notice provision, can be a sufficient basis for holding that a government entity has failed to

provide a free appropriate public education." *Gadsby*, 109 F.3d at 956. But our holding in *Hall* does not mean that violation of a procedural requirement of the IDEA (or one of its implementing regulations), in the absence of a showing that the violation actually interfered with the provision of a FAPE to the disabled child, constitutes a sufficient basis for holding that a government entity failed to provide that child a FAPE. We took the opportunity in *Gadsby* to clarify our holding in *Hall* as follows: "However, to the extent that the procedural violations did not actually interfere with the provision of a free appropriate public education, these violations are not sufficient to support a finding that an agency failed to provide a free appropriate public education." *Id. Accord Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200, 1207 (4th Cir. 1990) (no relief granted where the procedural violations complained of had no impact on whether plaintiff-student's IEP adequately assured him of a FAPE); *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990) ("the procedural faults committed by the Board in this case did not cause Chris to lose any educational opportunity"). Thus, under our circuit precedent, a violation of a procedural requirement of the IDEA (or one of its implementing regulations) must actually interfere with the provision of a FAPE before the child and/or his parents would be entitled to reimbursement relief of the type sought by the DiBuos.

Succinctly stated, the DiBuos' principal argument in response to the circuit precedent just set forth is that the "actual interference" requirement of *Gadsby* is always satisfied when a procedural violation of the IDEA (or one of its implementing regulations) causes interference with the parents' ability to participate in the IEP process. In other words, the DiBuos propose a broad legal rule to the effect that a procedural violation of the IDEA (or one of its implementing regulations) that causes interference with the parents' ability to participate in the IDEA process *per se* constitutes a denial of a FAPE to the disabled child at issue.[10] The DiBuos contend that such a broad legal rule is sensible given that parental participation in the IEP process is so important to the noble purposes of the IDEA.

---

[10]This is the same rationale used by the district court in ruling in favor of the DiBuos on the merits of their reimbursement claim.

We have no doubt that a procedural violation of the IDEA (or one of its implementing regulations) that causes interference with the parents' ability to participate in the development of their child's IEP will often actually interfere with the provision of a FAPE to that child. For example, if: (1) the school district members of an IEP team refuse to consider the private evaluations offered by the parents of a deaf child establishing that their child needs to be taught by a teacher with the ability to communicate in sign language in order for the child to receive a FAPE, (2) contrary evidence is insufficient to rebut the conclusions of the private evaluations on the same point, and (3) the IEP ultimately does not provide for the child to be taught by such a teacher, the school district's refusal to place the child in a classroom with the special teacher no doubt actually interferes with the provision of a FAPE to that child. But *often* is not the same as *always*. For example, when a presumably correct finding is made that the same disabled child, under the applicable standards of the IDEA, did not need to be taught by a teacher with the ability to communicate in sign language in order to receive a FAPE, the refusal to consider the private evaluations cannot be said to have actually interfered with the provision of a FAPE to that child.

In the present case, the ALJ made a finding that Mark was not entitled to ESY Services and, therefore, the refusal of the School District members of Mark's IEP Team to consider the DiBuos' ESY Services did not result in Mark being denied a FAPE—*i.e.*, the refusal did not actually interfere with the provision of a FAPE to Mark.[11] Under our well-established circuit precedent, *e.g.*, *Gadsby*, 109 F.3d at 956;

---

[11]Significantly, we recognize that the three factors primarily considered by the ALJ in determining whether Mark was entitled, under the IDEA, to ESY Services for the summer of 2000, when viewed collectively, amount to the same standard that we formally articulated in *MM* for determining when ESY Services are appropriate under the IDEA, 2002 WL 3100195 at *11. The three factors primarily considered by the ALJ are: (1) whether there is a likelihood of substantial regression of critical life skills caused by the school break and a failure to recover the lost skills in a reasonable time following the break; (2) whether the nature and/or severity of the disability will likely prevent Mark from receiving some educational benefit; and (3) whether there are any special circumstances that will prevent Mark from receiving some benefits from the educational program during the next school year.

*Tice*, 908 F.2d at 1207; *Burke County Bd. of Educ.*, 895 F.2d at 982, precedent the district court simply failed to recognize, if this finding by the ALJ is correct, the DiBuos are not entitled to reimbursement for the private placement of Mark in speech/language therapy and occupational therapy during the summer of 2000. Thus, the district court's erroneous failure to decide whether it accepts or rejects this finding by the ALJ requires that we vacate the judgment entered by the district court and the district court's award of attorneys' fees and other costs and remand the case to the district court for further proceedings.

We instruct the district court to determine on remand whether it accepts or rejects the ALJ's finding (and those necessarily underlying it) that Mark was not entitled to ESY Services and, therefore, the refusal of the School District members of Mark's IEP Team to consider the DiBuos' ESY Services did not result in Mark being denied a FAPE. In so doing, the district court must consider the ALJ's findings to be *prima facie* correct and explain why, under this due weight standard, it has chosen to accept or not accept each of those findings. *Hartmann v. County Bd. of Educ.*, 118 F.3d 996, 1000-01 (4th Cir. 1997) ("Administrative findings in an IDEA case are entitled to be considered *prima facie* correct.") (internal quotation marks omitted); *Doyle*, 953 F.2d at 106 (remanding IDEA case to district court for determination of whether student's IEP would give her a FAPE and instructing district court to review each administrative finding pertaining to this issue under the due weight standard and "explain why, under the due weight standard, it has chosen to accept or not accept that finding").

If, on remand, the district court chooses to accept the ALJ's finding that Mark was not entitled to ESY Services and, therefore, the refusal of the School District members of Mark's IEP Team to consider the DiBuos' ESY Services did not result in Mark being denied a FAPE, the district court must enter judgment in favor of the School District. To grant the reimbursement requested by the DiBuos, in the event the district court chooses to accept the ALJ's finding that Mark was not entitled to ESY Services for the summer of 2000, would grant the DiBuos undeserved monetary relief. *School Committee of Town of Burlington v. Department of Ed. of Mass.*, 471 U.S. 359, 370-71 (1985) ("Reimbursement [remedy under IDEA] merely requires [local

education agency] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP."). In light of our disposition, we express no opinion on the School District's alternative argument that Mark was ineligible for ESY Services for the summer of 2000 because he did not have an already approved IEP in place. We also express no opinion on the issues of whether and in what amount attorneys' fees and other costs would be recoverable by the DiBuos in the event they have the opportunity to make another motion under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B).

## IV.

In conclusion, we vacate the judgment of the district court and the district court's award of attorneys' fees and other costs, and remand this case to the district court for further proceedings in accordance with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS*